MAGNOLIA WINDOW GLASS COMPANY, PETITIONER, *v.* COMMISSIONER
OF INTERNAL REVENUE, RESPONDENT.

Docket No. 21773. Promulgated July 24, 1931.

*Fadjo Cravens, Esq.*, for the petitioner.
*John D. Kiley, Esq.*, for the respondent.

OPINION.

BLACK: The question presented is whether or not the petitioner is a transferee of the assets of the Model Window Glass Company within the meaning of section 280 of the Revenue Act of 1926, so as to render

it liable for unpaid taxes of its transferor. The petitioner contends that it was a bona fide purchaser in good faith for full value of the assets of the Model Window Glass Company, had no notice of the Government's tax claim at the time it purchased the assets, and, hence, is not liable as transferee of said assets, either at law or in equity. Undoubtedly such a state of facts would present a good defense, if it were established by evidence. *Metropolitan Securities*, 19 B. T. A. 299. But in this proceeding, the evidence does not establish the defense which has been made. The petitioner did not pay full value to the transferor corporation for the assets.

We have held in a number of recent cases that where the transferee corporation purchased all of the assets of the transferor corporation having a net value in excess of the amount of the taxes due, and paid therefor stock of the transferee, which was issued and paid directly to the stockholders of the transferor, leaving the transferor without assets, the transferee is liable to the extent of taxes legally due. *Woodley Petroleum Co.*, 16 B. T. A. 253; *Concrete Industries Co.*, 19 B. T. A. 655; *Gideon-Anderson Co.*, 20 B. T. A. 106; *Wayne Body Corporation*, 22 B. T. A. 401; *J. G. Nicholas*, 22 B. T. A. 477; *53 West 72nd Street, Inc.*, 23 B. T. A. 164; *Lester L. Robison et al.*, 22 B. T. A. 395.

Omitting a detailed discussion of the facts, it appears that the situation in the instant case was about as follows: C. P. Zenor, Sr., a practical and experienced glass manufacturer, was the majority stockholder and dominating influence in the Model Window Glass Company. His family held the rest of the stock. The plant and stock burned and $135,000 insurance was collected. The plant was rebuilt, but it was impossible to procure insurance as long as Zenor was manager of the corporation. Under these circumstances it was difficult to finance its operations, as banks would not loan money on uninsured property. The plant was operated about a year without insurance, but on account of difficulties with the Glass Blowers' Union, lack of insurance and borrowing credit and accumulated debts, further operations were suspended. Under these circumstances the agreement was made with Hill and Scroggin to organize a new corporation for the purpose of securing credit and funds, insurance, and paying urgent debts. The agreement was carried out as detailed in our findings of fact, by which the petitioner was organized and obtained a plant and real estate and raw material of the value of at least $35,000, for the payment of approximately $9,000 of debts owing by the old compny. It is true the evidence shows that Hill and Scroggin paid in $15,000 in cash for their stock, but the balance of such $15,000, after the payment of the $9,000 debts owing by the transferor corporation, was used in repairing the plant and equipment and putting it into operating condition after petitioner took it

over. This of course was a matter with which the transferor corporation had nothing whatever to do, and constituted no part of the purchase price which was paid by petitioner to the transferor corporation for its assets. The latter company was denuded of its assets and received nothing, and the payment of the comparatively small amount of indebtedness for at least $35,000 worth of property was an entirely inadequate consideration to constitute the petitioner a bona fide purchaser for value. The evidence in this proceeding would support a higher valuation than $35,000, on the assets transferred, but after giving consideration to all elements of value, we have found the value of such assets at time of transfer to be at least $35,000, which exceeds the amount of indebtedness assumed by petitioner of at least $25,000.

The case of *Fostoria Milling & Grain Co.*, 11 B. T. A. 1401, cited and relied upon by the petitioner, is not in point, as in that case the purchaser paid full value for the assets conveyed. On page 1409 the Board said: " The assets of the milling company transferred to petitioner had a fair market value at the time of the sale and transfer not in excess of $75,000. It further appeared the transferee in that case paid a mortgage of $72,000, with interest of $4,542.40, two notes of $3,500 and $2,000, with interest, and all taxes then due and assessed." These facts serve to distinguish the *Fostoria Milling & Grain Co.* case from the instant case.

Counsel for petitioner in his brief lays considerable stress on the fact that petitioner, after it acquired the property, never operated it at a profit and finally had to close down and is still closed down, lying idle as an unprofitable venture. But it must be borne in mind that our task is to find the value of the assets at the time of the transfer and what was paid for them.

Upon these facts we must base our decision, regardless of what took place in petitioner's business after the transfer. It is, therefore, our decision that petitioner is liable as transferee of the assets of the Model Window Glass Company to the full extent of the deficiency, $8,696.90.

*Decision will be entered for the respondent.*